UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COLETTE TAYLOR, individually and as
Personal Representative of the Estate of
JAMES E. TAYLOR, Deceased, and
DEVIN TAYLOR, a minor under 14 years of age,
by his General Guardian, Colette Taylor,

                              Plaintiffs,

   -vs-

WAUSAU UNDERWRITERS INSURANCE         CASE NUMBER: 04-C-1203
COMPANY;
COUNTY OF FOND DU LAC;
GARY M. PUCKER; DARWIN SCHMIDT;
JANELL MUELLER;
JEROME GAU; and MARY STEBERG,

                              Defendants.

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

---

NOW COMES the Plaintiffs, Colette Taylor, individually and as personal representative of the Estate of James Taylor, and Devin Taylor, by and through their attorneys, William Skemp Law Firm, by William P. Skemp, and hereby submit to this court this Brief in Opposition to Defendants' Motion for Summary Judgment.

**INTRODUCTION**

Plaintiffs have asserted claims against the individually named defendants and the County of Fond du Lac for violations of James Taylor's Fourteenth and Eighth Amendments by being

1

deliberately indifferent to James Taylor's constitutional rights by a failure to protect him from a strong likelihood of self-inflicted harm. [Pltf Complaint, para. 602].

Plaintiffs acknowledge that evidence may not be present to allow a claim against defendants Janell Mueller, Jerome Gau, and Mary Steberg, and have not made arguments to that effect and will stipulate to their dismissal from this case.

Plaintiffs can establish that the County of Fond du Lac, Gary Pucker, and Darwin Schmidt violated James Taylor's constitutional rights and request that this Court deny the defendants' Motion for Summary Judgment.

## ARGUMENT

**I  STANDARD OF REVIEW**

The Federal Rules of Civil Procedure dictate the circumstances under which a judge may grant summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c) (West 2004). The federal courts further clarified the standard in holding "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2507 (1986). It has further been adduced that the trial judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id*. The main inquiry the trial court must make is whether

2

the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 243.

## II THE PLAINTIFFS' CLAIMS UNDER 42 U.S.C. §1983 SHOULD NOT BE DISMISSED

### A. The Plaintiffs Have Asserted Sufficient Proof of An Unconstitutional Policy, Practice or Custom to Maintain Their Claims Against the County of Fond du Lac and Gary Pucker

The Seventh Circuit has noted that there are two routes a plaintiff may take to establish municipal liability under §1983. First, a constitutional injury caused by a municipality may be "shown directly by demonstrating that the policy itself is unconstitutional." *Estate of Novack ex rel. v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Second, municipal liability can also be demonstrated indirectly by its "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Both Officer Darwin Schmidt and Plaintiffs' expert, Thomas Rosazza, establish that the Fond du Lac County Jail had rules and policies that an inmate on suicide watch could not have his lights out in his cell.

> Q: Had you ever observed anytime when Mr. Taylor turned the lights off?
>
> A: That day?
>
> Q: At any time.
>
> A: Yes.
>
> Q: What is the policy with regard to that?
>
> **A: We were told that the lights had to stay on.**

3

> Q: Did you ever convey that to Mr. Taylor?
>
> A: Yes.
>
> Q: So you knew that he was violating the rules when he turned the lights off?
>
> A: Yes.

(Skemp Affidavit, Exhibit 1, Schmidt deposition, pg. 30, ln 24; pg 31, ln 1)[1].

Plaintiffs' expert, Rosazza, stated that the lights staying on in an inmate's cell under suicide watch may not be stated specifically in any literature. (Heidenreich Affidavit, Exhibit 1, Rosazza deposition, pg. 26, ln 22)[2]. However, he went on to state that this rule and policy <u>would be common sense</u>. (Rosazza deposition, pg 27, ln 1).

> A: I will tell you that officers and supervisors and managers are told, in policy development, that if you have a problem and you know about it, you fix it. You can't cover everything in standards, nor in the literature.

(Rosazza deposition, pg 27, ln 12)

Despite the rule and policy that the lights should be on and the common sense approach that the lights needed to be on in order to properly supervise, Taylor was able to turn off the light on several occasions prior to his suicide. (Schmidt deposition, pg 36, ln 12; pg 31, ln 17). In fact, Taylor was put in a cell where he could easily reach a light switch to turn it off.

---

[1] The deposition transcript of Darwin Schmidt is attached to the Affidavit of William P. Skemp. For ease of reference, Plaintiffs will refer to pages of the deposition rather than the Affidavit.

[2] The deposition transcript of Thomas Rosazza is attached to the Affidavit of Gregg Heidenreich. For ease of reference, Plaintiffs will refer to pages of the deposition rather than the Affidavit.

4

> Q: Did he have access to the light switch so as to be able to turn the lights on and off?
>
> A: Yes.
>
> Q: Where was that light switch?
>
> A: I believe it was on the right-hand side – right hand side of the door.
>
> Q: Inside?
>
> A: Outside. You have to reach outside through the flap to get the switch.
>
> Q: Could he do that?
>
> A: Easily.

(Schmidt deposition, pg 30, ln 11).

While the County of Fond du Lac and Gary Pucker had a policy of not allowing inmates on suicide watch to shut off their lights, they condoned the breach of that policy placing inmates on suicide watch in cells where they were able to easily turn off the lights. The plaintiffs can make a sufficient showing of municipal liability by their widespread practice of allowing at risk inmates to control their lighting. Gary Pucker was aware of the ability of inmates, in particular Taylor, to control the lighting and shut off the lights at will. (PFOF No. 37).

While Defendants state they were unaware that the ability of an inmate to control his own lighting posed any risk of harm, their own correctional officer has stated that is was a policy that the lights be kept on. It is logical to infer that the reason for this was for inmate safety.

It has been established that Taylor was able to turn off his light easily and had done so on occasions prior to his suicide. The County of Fond du Lac and Gary Pucker had a widespread policy of not allowing suicide watch inmates to turn off their lights, yet they also allowed a policy of placing

5

inmates on suicide watch in cells where they were able to turn on and off their lights. It is this second policy that shows a deliberate indifference to James Taylor's risk of suicide and leads to the conclusion that the plaintiffs are able to maintain their cause of action against Fond du Lac County and Gary Pucker.

Plaintiffs' expert, Rosazza, has testified as to the deliberate indifference of Fond du Lac County in condoning an inmate on suicide watch being able to turn off his light:

> A: One, one objective is the fact that they should have taken action to disable the switch. The number 6 is a conclusion on my part that, that they were indifferent to his safety by not disabling the light switch. One is they should have. The other is, is a conclusion on my part that, an opinion, that they were indifferent, given a jail manager's responsibility to identify problems and solve them.

(Rosazza deposition, pg 84, ln 11).

> A: The whole reason for the 15-minute watch is to be able to see the guy. You can't see the guy, Officer Kuitert said it was pitch black in the cell. And, and so you can't, you can't satisfy your, your supervisory routine if you can't see the guy.
> And the second thing, as I point out in my report, if a person is in there on 15-minute observations, certainly one of the reasons that you have them on there, in fact I think he even had a suicide blanket, is because suicide is a real possibility. So if the light goes out, the inmate is up to something. It could be, it could be detrimental to his health, and you have to be able to have the light on to supervise.

(Rosazza deposition, pg 73, ln 8).

The testimony of Officer Schmidt establishes that the light was to be on at all times in Taylor's cell. Gary Pucker admits that the practice at the jail was to allow all inmates access to light switches, even in violation of the jail's own policies. Further, Expert Rosazza establishes that the jail should have disabled the switch at the very least and allowing Taylor to continue to turn off his light showed deliberate indifference on the part of Pucker and Fond du Lac County. Based on the above, the

6

claims against the County of Fond du Lac and Gary Pucker should not be dismissed at this time.

> **B.  Darwin Schmidt's Conduct Does Rise to a Level of "Deliberate Indifference" and, Thus, Taylor's Constitutional Rights Were Violated By Schmidt.**

In order to establish that a jail officer violated an inmate's Fourteenth Amendment Rights, a plaintiff needs to show: "(1) that the deprivation [the inmate] experienced was, when viewed objectively, sufficiently serious; and (2) that [jail officer] was deliberately indifferent to the inmate's health and safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994). The first prong has been satisfied because, as the Seventh Circuit has noted, "it goes without saying that suicide is a serious harm" and "it would be difficult to think of a more serious deprivation." *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). To satisfy the second prong of *Farmer*, plaintiffs must establish that the jail officer was deliberately indifferent to the risk that the inmate would commit suicide. *Farmer*, 511 U.S. at 838-39.

To be liable under the Eighth Amendment for an inmate's suicide, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). However, the plaintiff does not have to show that the jail official failed to act believing that harm would actually befall an inmate. *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970. Both a claim under the Eighth and Fourteenth Amendments require a showing that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970; *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001).

Whether a jail official had the requisite knowledge is a question of fact. *See Farmer*, 511 U.S. at 842, 114 S.Ct. 1970. If "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id*.

Sufficient evidence exists for a trier of fact to conclude that Darwin Schmidt was exposed to information about James Taylor such that he must have known of a substantial risk of serious harm to Taylor. It is undisputed that Darwin Schmidt knew that Taylor was on suicide watch during the entire period of time he was detained at Fond du Lac County Jail. (Schmidt Affidavit, ¶13). It is also undisputed that when Taylor was placed in detention on July 24, 2001, he was placed in a suicide smock. (Schmidt Affidavit, ¶16). Mr. Schmidt states that he considers all detainees who are on suicide watch as individuals who pose a possibility of causing harm to themselves. (Schmidt Affidavit, ¶14). Further, Darwin Schmidt was aware that on August 8, 2001, James Taylor had been found with part of a razor that he had hidden from officers. (Schmidt Affidavit, ¶11; Schmidt Deposition, pg.20, ln. 7). Schmidt admits that the August 8 incident created a heightened awareness in him that Taylor might be of harm to himself. (Schmidt Deposition, pg. 21, ln 1). As further evidence, Mr. Schmidt states that he was aware of the charges against Taylor and the seriousness of the crime. (Schmidt Deposition, pg. 19, ln 7). Plaintiffs' expert, Thomas Rosazza, explained that certain factors existed that must have made Schmidt aware of the risk of suicide:

> Q: As of August 19, 2001, what factors are you aware of that the correction officers should have known regarding Taylor's likelihood of committing or attempting suicide?
>
> A: Well, he was on suicide watch.

8

Case 1:04-cv-01203-WCG   Filed 12/02/05   Page 8 of 19   Document 32

> A: The, the crime of notoriety, and the fact that he was a correctional officer, and, and my basis for that is that's what Schmidt said, Officer Schmidt.

(Rosazza deposition, pg 66, ln 9).

Given these facts and the factors that were in existence at the time Taylor committed suicide, it is apparent that Officer Schmidt must have known of the risk of suicide. Schmidt even admits that he was aware of a risk. In this situation, it is not as if Taylor was in the general population of inmates. He had been assessed and specifically placed on a suicide watch and it is illogical to conclude that an inmate placed on a suicide watch that has been placed in a suicide smock during his incarceration would not pose a risk of suicide or a correctional officer having contact with such inmate would not be aware of a risk of suicide. At the very least, a question of fact exists as to whether Officer Schmidt had the requisite knowledge that there was a risk of suicide.

With the determination that there is a question of fact as to whether there was a substantial risk of suicide by James Taylor, a determination must be made as to whether Officer Schmidt was deliberately indifferent to that risk. In other words, whether Officer Schmidt failed to take reasonable steps to prevent the inmate from performing the act. Sufficient evidence exists as to this second prong in several respects. Officer Schmidt has testified that an inmate put on suicide watch is meant to be a precaution to prevent suicide. (Schmidt deposition, pg 47, ln 1). Pursuant to those precautions, Fond du Lac County Jail instituted policies and procedures to follow for an inmate on suicide watch. Those policies include an inmate being placed in a single cell, given a "suicide smock" and being monitored approximately every 15 minutes. (Strand Aff., ¶9; PFOC 51)). During the period of Taylor's confinement, he was placed in a cell equipped with a camera to allow correctional officers in the control room the opportunity to see and observe Taylor via camera. (Strand Aff., para.

9

53; PFOC 59). As part of Officer Schmidt's duties, he was <u>required</u> to monitor Taylor. (Schmidt Aff., ¶26; PFOC 135).

There is no dispute that Officer Schmidt violated Fond du Lac County Jail policies by failing to properly monitor Taylor. (Schmidt deposition, Exh. 3). Officer Schmidt was reprimanded and disciplined for the following:

> On August 19, 2001 - Failed to continuously monitor the designated cameras of inmates classified accordingly, while present in the Control Station. Failed to conduct continual physical checks of prisoner in such security statuses at 15-minute intervals and the 30-minute intervals of the entire facility.
>
> Recorded incorrect/inaccurate entries onto the Prisoner Security Check Log and the same onto the Prisoner Count Log.
>
> Failed to conduct 15 minute Physical Checks of those inmates in such classification.

(Schmidt deposition, Exh. 3).

Officer Schmidt also failed to recognize that Taylor had turned off his lights and respond in a timely manner to get the lights turned back on. Schmidt knew that the policy and rules of Fond du Lac County jail were that an inmate on suicide watch was supposed to have his light on. (Schmidt deposition, pg. 30, ln 4). Schmidt's 2005 testimony in his affidavit and at his deposition was that he observed Taylor's lights being out at approximately 8:40 p.m. (Schmidt deposition, pg 31, ln 2). Schmidt was aware of Jail rules that Taylor's light was supposed to be on. (Schmidt deposition pg 30, ln 4). The defendants state in their summary judgment brief that Schmidt "immediately" responded to the lights being out and "promptly informed" another correctional officers. (Defendant's Brief pg. 25, 26). However, Schmidt's testimony is that he made mental note that the light was out, however, he did not alert anyone to the lights being off and instead simply waited for

10

other officers to come. (Schmidt deposition, pg 31, ln 17; pg 32, ln 13). Assuming that Officer Schmidt told another officer, namely Officer Kuitert that the light was out when she came to the control room, Schmidt states that he did not inform her there was any hurry to check on Taylor or get the light on. (Schmidt deposition, pg. 36, ln 6). According to Schmidt's 2005 testimony, Taylor had the lights off in his cell, violating policies and rules, and no action was taken immediately to remedy the situation despite policies and procedures requiring the light to be on. (Schmidt deposition, pg. 31, ln 17). Between approximately 8:40 and 8:50 p.m. on August 19, 2001, in the ten minutes Taylor's light was off and in camera monitoring was not able to be done, Taylor successfully committed suicide by hanging himself.

Plaintiffs' expert, Thomas Rosazza, establishes that Taylor being on a 15-minute suicide watch is extraordinary and the fact that the lights were out for any amount of time should be considered an emergency situation. (Rosazza deposition, pg 76, ln 7).

> Q: Assuming the light was off, you're saying he should have done something very promptly?
>
> A: Yes.
>
> A: . . . if he knew the light was off, he should have done something immediately.
>
> Q: . . .as a reasonably trained and experienced officer he, being Schmidt, would have known that Mr. Taylor may have been up to something and acted to protect his prisoner.
>
> A: Yes.

(Rosazza deposition, pg. 77, ln 1; pg. 78, ln 1; pg. 78, ln 20).

The suicide watch policies and procedures were established by the Fond du Lac County Jail and Darwin Schmidt was aware of those policies and responsible for carrying them out. These

11

policies and procedures have been determined to be reasonable steps to prevent suicide of an inmate. Officer Schmidt admits that the suicide watch and its procedures are precautions and steps to prevent suicide. As the above facts establish, Officer Schmidt failed to take those reasonable steps to prevent the suicide of James Taylor. He was found to have failed to properly monitor Taylor, and allowed Taylor to have his lights off in violation of rules and policies established by Fond du Lac County and of which Officer Schmidt was aware of at the time of the incident.

A genuine issue of fact certainly exists that Officer Schmidt violated Taylor's Eighth and Fourteenth Amendment rights. The plaintiffs have provided facts that Schmidt knew there was a significant risk of suicide and failed to take reasonable steps to prevent the suicide, resulting in deliberate indifference. Thus, the claims against Officer Darwin Schmidt cannot be dismissed at this time.

## III    THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY

The Seventh Circuit district court has outlined a two-step approach for analyzing a defendant's qualified immunity defense: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). With regard to the second step of the approach, the Supreme Court has stated that necessary to the determination of whether a constitutional right was clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991).

Further, the second step in the approach requires a plaintiff demonstrate a right is "clearly established." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). However, the plaintiff need not show that "the very action in question" was previously held unlawful or that a prior case is "on all fours" with the facts and the law in their own case." *Id*. "Closely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established." *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir. 1987).

In the present case before the court, the plaintiffs have asserted a violation of constitutional rights in their complaint alleging the defendant, Darwin Schmidt displayed deliberate indifference to James E. Taylor's constitutional rights guaranteed by the Eighth and Fourteenth Amendments of the U.S. Constitution to be protected from the strong likelihood of the infliction of self harm.

With regard to the first step in the two-prong analysis, the facts and law establish that James Taylor's constitutional rights were violated. As stated in the previous argument, an inmate's Eighth and Fourteenth Amendment rights are violated when there is a significant risk of harm and a jail official fails to take reasonable steps to prevent the harm, or is deliberate indifferent to the risk of harm. Plaintiffs have presented sufficient evidence through the testimony of Officer Schmidt and Plaintiffs' expert, Rosazza, that Officer Schmidt was deliberately indifferent to a known risk of suicide.

Plaintiffs established that there was significant risk of suicide. Officer Schmidt even admits that he was aware of the risk of suicide from James Taylor and there is no dispute that Taylor was placed on a suicide watch throughout his incarceration. Darwin Schmidt was exposed to information about James Taylor such that he must have known of a substantial risk of serious harm to Taylor.

13

Further, Darwin Schmidt was aware that on August 8, 2001, James Taylor had been found with part of a razor that he had hidden from officers. (Schmidt Affidavit, ¶11; Schmidt Deposition, pg.20, ln. 7). Schmidt admits that the August 8 incident created a heightened awareness in him that Taylor might be of harm to himself. (Schmidt Deposition, pg. 21, ln 1). As further evidence, Mr. Schmidt states that he was aware of the charges against Taylor and the seriousness of the crime. (Schmidt Deposition, pg. 19, ln 7). Plaintiffs' expert, Thomas Rosazza, explained that certain factors existed that must have made Schmidt aware of the risk of suicide:

> Q: As of August 19, 2001, what factors are you aware of that the correction officers should have known regarding Taylor's likelihood of committing or attempting suicide?
>
> A: Well, he was on suicide watch?
>
> A: The, the crime of notoriety, and the fact that he was a correctional officer, and, and my basis for that is that's what Schmidt said, Officer Schmidt.

(Rosazza deposition, pg 66, ln 9).

In *Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001), the court found that if correctional officers were aware of the alleged risk of suicide to an inmate, failing to determine what was going on in the inmate's cell could rise to the level of deliberate indifference. *Sanville*, 266 F.3d at 739. *Sanville* involved an inmate on the day of his suicide that had covered all of the openings in his cell with paper making it nearly impossible to see inside. *Id.* at 731. While in *Sanville*, the inmate had his cell openings covered for several hours, the court did determine that in that time, there was not an attempt by officers to discern if the inmate was stable. The court held that the officers' failure to determine what was going on in the inmate's cell could easily be egregious enough to rise to the level of deliberate indifference. *Id.* at 739. Such is the case in the present circumstances. Taylor was on

14

suicide watch and was to be monitored on at least a 15 minute basis. Schmidt failed to do this and violated jail policies. He also failed to determine what was going on in Taylor's cell in a prompt manner when the lights were out, making it impossible for Schmidt to determine what was going on.

As Plaintiffs have previously argued with regard to Officer Schmidt's liability, the suicide watch policies and procedures were established by the Fond du Lac County Jail and Darwin Schmidt was aware of those policies and responsible for carrying them out. There is no dispute that the policies and procedures were reasonable steps to prevent suicide of an inmate. Officer Schmidt admits that the suicide watch and its procedures are precautions and steps to prevent suicide. However, Officer Schmidt failed to take those reasonable steps to prevent the suicide of James Taylor. He was found to have failed to properly monitor Taylor, and allowed Taylor to have his lights off in violation of rules and policies established by Fond du Lac County and of which Officer Schmidt was aware of at the time of the incident.

The second prong of the analysis involves whether the constitutional right was clearly established at the time of Taylor's suicide. The court, in *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001), established that there was little debate that it has been clearly established, long before 2001, "that prison officials will be liable under Section 1983 for a pretrial detainee's suicide if they were deliberately indifferent to a substantial risk suicide risk." Further, "it was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk. Deliberate indifferent to a prisoner's medical needs constitutes cruel and unusual punishment in violation of the Eighth

15

Amendment. *Id*. Thus, the court in that case found that a constitutional right was clearly established in circumstances involving deliberate indifference.

**IV   PLAINTIFFS' SECOND CAUSE OF ACTION BASED UPON NEGLIGENCE SHOULD NOT BE DISMISSED**

    **A.   The Plaintiffs' State Law Claims are Not Barred by the Statute of Limitations**.

Plaintiffs do not dispute that Mr. Taylor committed suicide on August 19, 2001, and the Summons and Complaint that commenced this action was filed with this court on December 17, 2004. However, given that this case involved a municipality that requires notice of claim to be given, the three year statute of limitations has been extended by Wisconsin courts to three years and 120 days. Thus, the plaintiffs state law claims are not barred by the statute of limitations.

Wis. Stat. §893.80(1)(b) provides that no action may be brought against a governmental body, officer, agent, or employee unless that plaintiff first provides the governmental body with a notice of claim within 120 days and a claim stating the relief sought. These notices are followed by either a denial of such claim by the governmental body, or the expiration of the 120-day disallowance period.

> The Wisconsin Supreme Court case of Colby v. Columbia County held:
> The 120-day waiting period, required prior to the commencement of an action against the county, must be added to the statutory limitation of 3 years in order to obtain the time within which the action may be brought, thereby producing a 3-year-120-day limitations period on tort claims against the county by operation of the statutory stay of 893.23.

202 Wis.2d 342, 357, 550 N.W.2d 124, 131 (1996).

Plaintiffs provided a notice of claim 120 days after the incident occurred and, subsequently, provided a claim for the relief sought on August 16, 2004. (Crook Affidavit). The County provided no disallowance to the claim and at the expiration of 120 days, Plaintiffs filed their complaint on

December 17, 2004. (Skemp Affidavit). This was within the 3 year 120 day period provided by the Wisconsin Supreme Court. Thus, the Plaintiffs' negligence action is not barred by the Statute of Limitations.

### B. The Plaintiffs' Wrongful Death Action is not Barred.

The defendants assert Wisconsin has limited a plaintiff's cause of action for negligence with the cause of death was suicide and cite *Bogust v. Iverson*, 10 Wis.2d 129, 138 (1960) and *St. Croix Falls School District*, 228 Wis.2d 215 (Ct. App. 1999) as support. The *St. Croix* case involved a wrongful death action against a school district for a student's suicide while truant from school. The court stated that Wisconsin follows the general rule that "suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render the defendant civilly liable." *Id.* at 224.

The Seventh Circuit Court of Appeals for the Eastern District of Wisconsin has spoken regarding the doctrine set forth in *St. Croix* and held that the doctrine of "superceding cause" is not applied "when the duty of care claimed to have been violated is precisely a duty to protect against ordinarily unforeseeable conduct." *Beul v. Ass'n Int'l Inc.*, 233 F.3d 441, 447 (E.D. Wis. 2000). The court went on to state, "[t]he existence of the duty presupposes a probable, therefore a foreseeable, consequence of its breach." *Id.* The court went on to conclude that a hospital that fails to maintain a careful watch over patients known to be suicidal is not excused by the doctrine of superseding cause from liability for a suicide. *Id.*

The scenario set forth by the *Beul* court is similar to the present circumstances in which the court stated it would not excuse the defendants' negligence by the doctrine of superseding cause from liability for a suicide. The facts are undisputed that James Taylor was placed on a suicide watch on

17

August 8, 2001. [PFOF No. 112-113]. As of August 19, 2001, James Taylor was still on a suicide watch. Officer Darwin Schmidt's shift started at 3:00 p.m. on August 19, 2001, and as part of his <u>duties and responsibilities</u> on August 19, 2001, Schmidt was required to monitor Taylor pursuant to the suicide watch. [PFOF No. 135].

It has been established that Officer Schmidt was reprimanded for failing to properly monitor James Taylor while on suicide watch. Specifically, Schmidt admitted to failing to continuously monitor the designated cameras of inmates, failing to conduct continual physical checks of Taylor at 15-minute intervals, specifically failing to make a physical check of Taylor at 8:32 p.m. (Schmidt Deposition, Ex. 3). While his duties and responsibilities were to monitor James Taylor, Schmidt admitted that he failed to do so at a critical time in which Taylor subsequently committed suicide.

There is no doubt that Schmidt failed to keep a careful watch of Taylor whom he knew was on a suicide watch. Schmidt was aware that the suicide watch was meant to be a precaution to prevent suicide. (Schmidt deposition, pg.47, ln.1). Schmidt knew that the policy and rules of Fond du Lac County jail were that an inmate on suicide watch was supposed to have his light on. (Schmidt deposition, pg. 30, ln 4). Schmidt's 2005 testimony in his affidavit and at his deposition was that he observed Taylor's lights being out at approximately 8:40 p.m. (Schmidt deposition, pg 31, ln 2). Schmidt was aware of Jail rules that Taylor's light was supposed to be on. (Schmidt deposition pg 30, ln 4). Despite those rules, Schmidt's testimony is that he made mental note that the light was out, however, he did not alert anyone to the lights being off and instead simply waited for other officers to come. (Schmidt deposition, pg 31, ln 17; pg 32, ln 13). According to Schmidt's 2005 testimony, Taylor had the lights off in his cell, violating policies and rules, and no action was taken immediately to remedy the situation. Between approximately 8:40 and 8:50 p.m. on August 19, 2001, in the ten

18

minutes Taylor's light was off and in camera monitoring was not able to be done, Taylor successfully committed suicide by hanging himself.

Given the facts of the present case and Darwin Schmidt's obvious failure to perform his duties in monitoring an inmate on suicide watch, the holding set forth in by the *Beul* court should be applied and Schmidt's negligence should not be excused by the superceding cause doctrine.

## CONCLUSION

Based on the above argument and authorities, plaintiffs respectfully requests that this Court enter an order denying summary judgment to the defendants.

Dated this 2nd day of December, 2005.

WILLIAM SKEMP LAW FIRM, S.C.


By:\_\_\_\_\_/s/ William P. Skemp_____
William P. Skemp (01008003)
Attorney for the Plaintiffs
700 North 3rd Street, Ste. 202
La Crosse, WI 54601
(608) 791-2500

19